GENERAL ATOMIC COMPANY, a partnership composed of Gulf Oil Corporation and Scallop Nuclear, Inc., Plaintiff,

v.

DUKE POWER COMPANY, a corporation, Defendant.

No. C–C–76–173.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Sept. 9, 1976.

Robert W. King, Jr., Moore & Van Allen, Charlotte, N.C., for plaintiff.

Clarence W. Walker and Charles V. Tompkins, Jr., Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., for defendant.

## ORDER

McMILLAN, District Judge.

General Atomic Company, plaintiff, is a partnership composed of Gulf Oil Corporation, an oil company, and Scallop Nuclear, Inc. It styles itself on its stationery as "A Gulf and Royal Dutch Shell Company." General Atomic brought this action to obtain a declaration of rights under its November 7, 1973, contract by which it agreed to supply uranium to the defendant, Duke Power Company; it also moved for a stay of arbitration pending the conclusion of this action. Duke moved for a stay of this action pending arbitration. A hearing was conducted on Friday, August 13, 1976, on pending matters.

Duke, like other electric power companies, generates electric power, in part from the energy of falling water, but in the main by steam turbines. Most of the heat to produce the steam that turns the turbines comes from coal, but in recent years some of the heat is generated by nuclear reaction. Uranium, in one or more of its forms, is a fuel now used in some plants to generate such heat.

United Nuclear Corporation was a producer of uranium.

In 1970, United Nuclear made a contract with Duke Power Company to supply Duke with about six million pounds of uranium fuel in the years from 1971 to 1985, at prices to be computed on a somewhat sliding scale, but essentially in the neighborhood of $8.00 to $10.00 per pound. Deliveries were made under that agreement.

In June, 1971, Gulf and United Nuclear formed a new corporation, Gulf United Nuclear Fuels Corporation (GUNF). Gulf owned 57% and United Nuclear owned 43% of the GUNF stock. United Nuclear assigned the Duke uranium supply contract to GUNF, and Duke consented to the assignment only on condition that both Gulf Oil Corporation and United Nuclear guarantee that GUNF would perform its contract obligations. They did so guarantee.

In September, 1973, Gulf Oil broke up its joint venture with United Nuclear, bought out United Nuclear's interest in GUNF, and made a contract with United Nuclear (dated June 30, 1973) to purchase uranium from United Nuclear.

In November, 1973, Duke entered into the contract with GUNF for the purchase of uranium fuel out of which this dispute arises; this contract replaced the original 1970 contract with United Nuclear.

Immediately thereafter, Gulf Oil merged GUNF into Gulf as a division of Gulf and on January 1, 1974, assigned the Duke contract to General Atomic Company, the "Gulf Oil and Royal Dutch Shell Company" which is the plaintiff in this suit.

The contract contains an arbitration agreement apparently enforceable under North Carolina law and enforceable in this court.

United Nuclear Corporation was left with no direct duties to Duke, though it had been required by Duke to guarantee, and did guarantee, the obligations of General Atomic and Gulf to Duke under the uranium supply contract.

General Atomic Company made deliveries until the end of 1975, but on December 30, 1975, it defaulted and failed to deliver 325,000 pounds of uranium.

General Atomic contends that it is excused from performance of its agreement with Duke because (and to the extent that) United Nuclear Corporation has failed or may fail to deliver fuel to General Atomic.

Apparently the open market price has gone up from $8.00 or $9.00 a pound to $39.00 or $40.00 a pound. Duke has incurred losses already estimated at about $11,500,000.00 because it has already had to buy on the open market 325,000 pounds of uranium fuel at approximately $39.00 a pound which plaintiff had contracted to deliver for $9.00 a pound.

Duke's losses will amount to about $180,-000,000 if plaintiff succeeds in its contentions and if the price of uranium remains at its present level.

Plaintiff claims that the arbitration agreement is not enforceable and that arbitration has not been properly requested. Plaintiff claims that it should be excused from performance because it contends that it was contemplated that United Nuclear Corporation would be the sole source of supply for its deliveries. It also suggests, if arbitration is to be allowed, that United Nuclear Corporation be made a party to the arbitration.

■ I find the arbitration agreement to be enforceable; and the defects in the call for arbitration to date, if any exist, are remediable.

Since both parties are seeking equitable relief, some minimal attention should be given to their probable chances of success on the merits.

General Atomic's claim that its deliveries of uranium were to be made only from fuel supplied by United Nuclear Corporation does not appear to be supported by the present record.

No portion of the contract supporting that claim has been called to the attention of the court.

In fact, the contract (Article XXX–D.) seems to point expressly in the opposite direction:

"D. *Gulf United may enter into subcontracts and purchase agreements with others in the performance of this Agreement.* No contractual or employer-employee relationship between Purchaser and any such Gulf United subcontractor shall be created by virtue of this Agreement." (Emphasis added.)

The plaintiff's essential contract is (page 1) to *"supply"* fuel assemblies. In the face of the express provisions of Article XXX, and in the absence of contract provisions limiting plaintiff's sources to the original contracting supplier, United Nuclear Corporation, it would appear that the plaintiff has an uphill battle to persuade a trier of fact that it should be excused from performance simply because United Nuclear, one source of supply, has stopped making deliveries. Unless such persuasive evidence is developed, it appears that Gulf, a big operator in oil, has speculated big and lost big in uranium.

Such considerations are for the arbitrator and are relevant here only as they bear upon decision of the equitable questions before the court.

■■ As to the request for a delay because United Nuclear Corporation is not a party defendant, two points should be noted:

(a) United Nuclear, as a guarantor only of the 1973 contract in suit, would not be an improper party, but it is certainly not a necessary party to a determination of the rights of General Atomic and Duke under the arbitration agreement.

(b) A state court in New Mexico has entered an order, binding upon General Atomic, the plaintiff herein, enjoining plaintiff from litigating in any other court, or arbitrating, its claims against United Nuclear pending decision by the New Mexico state court. Despite that court order, General Atomic suggests that the court should bring United Nuclear into the arbitration proceedings on its own motion, and in any event should not permit arbitration of Duke's claim until United Nuclear has been brought into the arbitration proceedings. The one would be a violation of the letter and the other the spirit of the New Mexico court order. Moreover, I am unwilling to accept the suggestion that the New Mexico courts will not give General Atomic a fair hearing because United Nuclear, apparently a publicly held corporation, digs uranium in New Mexico. This court must and will proceed upon the premise that the New Mexico court will decide the case on its merits without regard to where the uranium is dug.

IT IS THEREFORE ORDERED:

1. That the plaintiff's motion to stay arbitration is denied.

2. That defendant's motion to stay this action and all proceedings herein until an arbitration shall have been had in accordance with the terms of the Agreement between the parties is allowed.