GENERAL ATOMIC CO. *v.* FELTER, JUDGE, ET AL.

No. 76–1640.   Decided October 31, 1977

PER CURIAM.

The petition for a writ of certiorari is granted.

General Atomic Co. (GAC) challenges the validity of an injunction issued by a New Mexico state court restraining it from filing and prosecuting actions against United Nuclear Corp. (UNC) in federal court.   We reverse because under *Donovan* v. *Dallas,* 377 U. S. 408 (1964), it is not within the power of state courts to bar litigants from filing and prosecuting *in personam* actions in the federal courts.

The state-court injunction was issued in connection with one of several lawsuits arising from contracts entered into by UNC and various utility companies providing for the supply by UNC of uranium.   GAC subsequently succeeded to UNC's rights and obligations under the utility contracts and, pursuant to a 1973 agreement, UNC became obligated to supply GAC with uranium required under the utility contracts.   As the result of a more than fivefold increase in the price of uranium between 1973 and mid-1975, UNC stopped delivery of the uranium and in August 1975 filed a declaratory judgment action in the District Court of Santa Fe County, N. M.,

against GAC and its constituent partners seeking to avoid its obligations under the uranium supply contract.[1] In January 1976, GAC filed an interpleader complaint in the United States District Court for the District of New Mexico against UNC and four utilities seeking determinations binding on all parties as to their respective rights and obligations under its 1973 uranium supply agreement with UNC and its contracts to supply uranium to the utilities. The District Court dismissed the interpleader action on motion of all defendants on March 2, 1976, because of the lack of subject-matter jurisdiction.[2] This dismissal, however, did not conclude the federal-court litigation. By early March 1976, the utilities had brought the following three federal proceedings against GAC: (1) *Indiana & Michigan Electric Co. (I&M)* v. *GAC* (an action for damages and specific performance filed in the Southern District of New York); (2) *Commonwealth Edison Co.* v. *GAC* (an action to compel arbitration filed in the Northern District of Illinois); (3) *Duke Power Co.* v. *GAC* (a demand for arbitration filed in the Western District of North Carolina).

On March 15, 1976, UNC, after being warned by I&M that GAC might attempt to implead it in the Southern District of New York action, obtained *ex parte* from the Santa Fe court a

---

[1] After one of the defendants removed the entire case to the United States District Court for the District of New Mexico under 28 U. S. C. § 1441 (c), UNC on December 31, 1975, took a voluntary nonsuit as of right pursuant to Fed. Rule Civ. Proc. 41 (a) (1) (i). The same day UNC instituted a new action virtually identical to the previous one, except that it named only GAC as a defendant.

[2] The Tenth Circuit affirmed the dismissal on April 8, 1977. *General Atomic Co.* v. *Duke Power Co.*, 553 F. 2d 53. On January 23, 1976, Gulf Oil Corp., one of GAC's constituent partners, had filed a declaratory judgment action in the United States District Court for the District of New Mexico concerning the validity of a release by UNC of certain claims against it. The action was dismissed on September 29, 1976, on the ground that the issue presented could be decided in the litigation pending in the Santa Fe court.

temporary order restraining GAC from " 'instituting suit or filing a third-party complaint against ·[UNC].' " [3] On April 2, 1976, after a hearing, the Santa Fe court issued a preliminary injunction broadly restraining GAC from filing or prosecuting any original, third-party, or arbitration actions relating to the subject matter of the Santa Fe lawsuit or including UNC as a party in any actions.[4] Two actions previously filed in New Mexico federal court were exempted from the injunction. The New Mexico Supreme Court granted an alternative writ of prohibition on April 14, 1976, staying the enforcement of the injunction. Immediately after oral argument, on June 16, 1976, however, the court, without opinion, quashed the writ as improvidently granted. We subsequently granted GAC's petition for certiorari, vacated the judgment of the New Mexico Supreme Court, and remanded the cause to that court to consider whether its judgment was based upon federal or state grounds, or both. 429 U. S. 973 (1976).

---

[3] Pet. for Cert. 9–10. UNC had originally applied for a temporary restraining order on January 19, 1976, in the Santa Fe court to prevent GAC from instituting any additional suits against UNC. This motion was denied.

[4] "IT IS THEREFORE ORDERED that General Atomic Company, its partners, privies, agents, servants and employees, are hereby preliminarily enjoined and prohibited from filing or prosecuting any other action or actions against United Nuclear Corporation in any other forum relating to any rights, claims or the subject matter of this action. This injunction prohibits the institution or prosecution of ordinary litigation, third party proceedings, cross-claims, arbitration proceedings or any other method or manner of instituting or prosecuting actions, claims or demands relating to the subject matter of this lawsuit, or including United Nuclear Corporation as a party thereto. However, the case of Gulf Oil Corporation v. United Nuclear Corporation, Civil Cause No. 76–032–B, currently pending in the United States District Court for the District of New Mexico, is excepted from the operation of this preliminary injunction, as is the appeal currently pending before the Tenth Circuit Court of Appeals in General Atomic Co. v. Duke Power Company, et al., No. 76–1152. The injunction herein against defendant shall bind Plaintiff to the same terms." App. to Pet. for Cert. 3a–4a.

Upon remand, the New Mexico Supreme Court issued an opinion [5] reaffirming its prior judgment and sustaining the injunction on the ground that its issuance was within the inherent equity jurisdiction of the Santa Fe court and was not prohibited by *Donovan* v. *Dallas, supra.* It thought that *Donovan* is not applicable "where a party is currently proceeding in federal court and where any further federal action would be based upon the same issues and events for the purpose of harassment," [6] and because the Santa Fe court's injunction, unlike that adjudicated in *Donovan,* "does not directly or indirectly affect any proceeding in the district court or appellate courts of the United States where jurisdiction has attached." [7] We conclude that the New Mexico Supreme Court's interpretation of *Donovan* is untenable and that the injunction is in direct conflict with that decision and the Supremacy Clause of the Constitution.

In *Donovan* v. *Dallas, supra,* a plaintiff class sought an injunction against construction of an airport runway and issuance of municipal bonds for that purpose. After losing in state court and exhausting their appeals, many of the named plaintiffs together with a group of new plaintiffs filed an action in United States District Court raising issues substantially identical to those already litigated in the state action and seeking similar relief. The city of Dallas moved to dismiss the federal action and, as the result of a favorable judgment in the Texas Supreme Court, obtained an injunction from the Texas Court of Civil Appeals prohibiting all members of the original class from further prosecution of the pending federal action *and* from " 'filing or instituting . . . any further litigation, lawsuits or actions in any court, the purpose of which is to contest the validity of the airport revenue bonds . . . .' "

[5] 90 N. M. 120, 560 P. 2d 541 (1977).

[6] *Id.,* at 123, 560 P. 2d, at 544.

[7] *Id.,* at 124, 560 P. 2d, at 545. This statement is not factually accurate. See n. 11, *infra.*

377 U. S., at 410. When the District Court granted the city's motion to dismiss following the issuance of the injunction, some of the plaintiffs took an appeal and others filed a second federal action seeking to enjoin Texas state courts from enforcing the injunction. Subsequently, the Texas Court of Civil Appeals found in contempt both the plaintiffs who had appealed and those who had filed the second federal action. We reviewed the convictions of both sets of plaintiffs and held the injunction to be invalid because "state courts are completely without power to restrain federal-court proceedings in *in personam* actions . . . ." *Id.*, at 413. Our holding was premised on the fact that the right to litigate in federal court is granted by Congress and, consequently, "cannot be taken away by the State." *Ibid.*

The New Mexico Supreme Court clearly erred in concluding that *Donovan* precludes state courts only from enjoining litigants from proceeding further with federal suits in which jurisdiction has already attached at the time of the issuance of the injunction but permits state-court injunctions against additional suits in federal court. In *Donovan*, the Texas Supreme Court not only ordered an injunction against further prosecution of the then-pending federal case but, because "[t]here is indication in the history of this matter that it has reached the point of vexatious and harassing litigation," also authorized the Court of Civil Appeals to enjoin the filing of additional suits if it concluded that such suits "may be filed." [8] The injunction then issued by the Court of Civil Appeals forbade the filing of any new federal suits as well as further proceedings in pending actions; and the ensuing contempt judgments punished both the continued prosecution of the pending federal action and the filing of the additional suit in federal court.[9] We reversed the judgment of the Texas

---

[8] *Dallas* v. *Dixon*, 365 S. W. 2d 919, 927 (1963).

[9] 377 U. S., at 410–411; *Dallas* v. *Brown*, 368 S. W. 2d 240 (Tex. Civ. App. 1963).

Supreme Court authorizing the injunction and also vacated all the contempt judgments. It is therefore clear from *Donovan* that the rights conferred by Congress to bring *in personam* actions in federal courts are not subject to abridgment by state-court injunctions, regardless of whether the federal litigation is pending or prospective.

We also reject the New Mexico Supreme Court's attempt to distinguish *Donovan* on the ground that GAC was currently proceeding in federal court[10] and that any additional suits would be for the purpose of harassment and therefore enjoinable. In authorizing an injunction against further federal proceedings, the Texas Supreme Court expressly recognized the indication of "vexatious and harassing litigation." Indeed, *Donovan* presented as compelling a case as there could be for permitting a state court to enjoin the further prosecution of vexatious federal proceedings. It involved a suit filed in federal court after the issuance of a final state-court judgment deciding the principal claims pressed in the federal action adversely to the federal plaintiffs. Moreover, as the *Donovan* opinion pointed out, the pendency of the federal action had the effect of rendering the state-court judgment ineffective, because Texas law provided that the bonds could not be issued while litigation challenging their validity was pending. We nevertheless overturned the state-court injunction.

There is even less basis for the injunction in this case. Here there is no final state-court judgment, since UNC's original action against GAC in the Santa Fe court has not yet been tried. In addition, GAC's opportunity to fairly litigate the various claims arising from this complex action would be substantially prejudiced if the injunction were allowed to

---

[10] The New Mexico Supreme Court apparently ignored the fact that both of the federal actions exempted from the injunction had been dismissed long before the issuance of its opinion. Indeed, the interpleader action was dismissed prior to the issuance of the injunction. See *supra,* at 13, and n. 2.

stand. What the New Mexico Supreme Court has described as "harassment" is principally GAC's desire to defend itself by impleading UNC in the federal lawsuits and federal arbitration proceedings brought against it by the utilities.[11] This, of course, is something which GAC has every right to attempt to do under Fed. Rule Civ. Proc. 14 and the Federal Arbitration Act.[12] The right to pursue federal remedies and take

---

[11] As a result of the injunction, GAC was even prevented from impleading UNC in the Southern District of New York action instituted by I&M against GAC prior to its issuance. GAC did subsequently succeed in obtaining the dismissal of this action pursuant to Fed. Rule Civ. Proc. 19 on the ground that UNC was a necessary party which could not be joined because of the injunction, but only at the price of surrendering its right to litigate its disputes with I&M in a federal forum. *Indiana & Michigan Electric Co.* v. *Gulf Oil Corp.*, 76 Civ. 881 (SDNY Jan. 5, 1977). The injunction has also prevented GAC from asserting claims against UNC under the arbitration provision of the 1973 uranium supply agreement in the pending arbitration proceeding instituted against GAC and UNC by Commonwealth Edison prior to its issuance, even though the District Court granted Commonwealth's demand for arbitration and the Seventh Circuit has affirmed. *Commonwealth Edison Co.* v. *Gulf Oil Corp.*, 400 F. Supp. 888 (ND Ill. 1975), aff'd, 541 F. 2d 1263 (1976). In addition, the Western District of North Carolina federal court has refused to stay arbitration between Duke and GAC in a proceeding also instituted prior to the injunction, despite GAC's contention that UNC was an indispensable party to any such arbitration proceeding which it was prevented from impleading by the injunction. The court acknowledged, however, that UNC would be a proper party to the proceeding. *General Atomic Co.* v. *Duke Power Co.*, 420 F. Supp. 215 (1976).

As the Tenth Circuit recognized in *General Atomic Co.* v. *Duke Power Co.*, 553 F. 2d, at 56, 58, GAC is exposed to a substantial risk of inconsistent adjudications in separate proceedings. For example, GAC fears that the arbitrators may find that GAC is obligated to deliver uranium to Commonwealth at the contract prices, while the Santa Fe court may hold, on the contrary, that GAC is not so obligated and excuse UNC from performance to GAC on the ground that its obligations are contingent upon GAC's contractual obligations to Commonwealth. Pet. for Cert. 20–22.

[12] 9 U. S. C. § 2 *et seq.* It is impossible, of course, to foresee all the occasions during the course of this complex litigation in which GAC would justifiably assert claims in federal proceedings.

advantage of federal procedures and defenses in federal actions may no more be restricted by a state court here than in *Donovan*. Federal courts are fully capable of preventing their misuse for purposes of harassment.

The judgment of the New Mexico Supreme Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACKMUN would not dispose of this case summarily but would grant certiorari and hear argument.

MR. JUSTICE REHNQUIST, dissenting.

The Court holds that a state court lacks the power to enjoin persons subject to its jurisdiction from initiating duplicative and vexatious litigation in the federal courts, litigation which had not been commenced at the time of the state-court injunction. While this conclusion is arguably supported by a portion of the holding of *Donovan* v. *Dallas*, 377 U. S. 408 (1964), it is in many ways contrary to the reasoning of that decision, and undermines the historic power of courts of equity to guard against abuse of judicial proceedings. Because *Donovan* involves a procedural rule which has application in myriad situations, I believe that its holding should be in part re-examined.

In *Swift & Co.* v. *Wickham*, 382 U. S. 111, 116 (1965), the Court said:

"Unless inexorably commanded by statute, a procedural principle of this importance should not be kept on the books in the name of *stare decisis* once it is proved to be unworkable in practice; the mischievous consequences to litigants and courts alike from the perpetuation of an unworkable rule are too great."

The author of *Donovan* was particularly cognizant of the sensitive relationship between state and federal courts. See

*Younger* v. *Harris,* 401 U. S. 37 (1971); *Atlantic Coast Line R. Co.* v. *Locomotive Engineers,* 398 U. S. 281, 287 (1970). Because the rule in *Donovan* implicates that relationship, I would not extend its holding as the Court now does.

The Court in *Donovan* based its decision on the "general rule" that "state and federal courts would not interfere with or try to restrain each other's proceedings." 377 U. S., at 412. Such a general rule of parity implies that, where a federal district court has power to enjoin the institution of proceedings in state court, a state court must have a similar power to forbid the initiation of vexatious litigation in federal court.

Congress, in enacting the Anti-Injunction Act limiting the authority of United States courts to stay proceedings in any court of a State, 28 U. S. C. § 2283, excepted from the limitation an injunction "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." See *Mitchum* v. *Foster,* 407 U. S. 225, 231–236 (1972); *Atlantic Coast Line, supra,* at 294–296. Cf. *Kline* v. *Burke Constr. Co.,* 260 U. S. 226 (1922). If Congress saw fit to create such an exception to the "[l]egislative policy [which] is here expressed in a clear-cut prohibition," *Clothing Workers* v. *Richman Bros. Co.,* 348 U. S. 511, 516 (1955), it could not have intended to deny the same limited injunctive authority to state courts of general jurisdiction. Neither the Supremacy Clause of Art. VI of the Constitution or the congressional grants of jurisdiction to federal courts in any way militate against the conclusion that *both* state and federal courts possess the authority to protect jurisdiction which they have acquired from being undercut or nullified by suits later instituted in the courts of the other jurisdiction.

Unlike the Texas Court of Civil Appeals in *Donovan,* the New Mexico District Court in this case enjoined only the initiation of new proceedings, specifically excepting two federal-court actions already begun by petitioner and its constituent partners. Any ambiguity inherent in the wording of the

District Court's injunction with regard to other proceedings has been authoritatively resolved by the Supreme Court of New Mexico, which held: "The injunction is directed only towards the institution of future litigation wherein no federal or state court has yet to acquire jurisdiction." 90 N. M. 120, 124, 560 P. 2d 541, 545 (1977). The existence of power in the state courts to guard against the abuse of the federal courts for purposes of harassment is not foreclosed by *Donovan,* even though this Court, in vacating the contempt citation of those parties who initiated a federal action subsequent to the state order, necessarily held that the Texas court lacked such power in that instance. There, in the subsequent action, the federal plaintiffs sought to enjoin the Supreme Court of Texas from interfering with a pending action which this Court held they had a right to maintain. The conclusion that the New Mexico court has the power to forbid petitioner from involving respondent in a multitude of separate actions with different parties does not undercut the holding of *Donovan* that a federal plaintiff may seek to protect his right to proceed with a pending suit.

The Supreme Court of New Mexico has acted consistently with both the holding and the reasoning of *Donovan,* and I would therefore affirm its judgment.