**DRUG PURCHASE, INC., Plaintiff,**

v.

**Mitchell DUBROFF, Clement J. Deodati, Victor J. D'Amico, John J. O'Grady, Albert J. Sica, Doe 1, Doe 2 and Doe 3, Defendants.**

No. 78 Civ. 5298.

United States District Court,
S. D. New York.

Feb. 25, 1980.

Bass, Ullman & Lustigman, New York City, for plaintiff; Robert Ullman, Joan Licht Mantel, New York City, of counsel.

Kaminsky & Breitbart, White Plains, N.Y., for defendant Mitchell Dubroff; Harvey A. Kaminsky, Roberta S. Bren, White Plains, N.Y., of counsel.

Jacobson & Goldberg, Garden City, N.Y., for defendant Clement J. Deodati; Richard E. Schrier, Garden City, N.Y., of counsel.

Kean & Kean, New York City, for defendant Victor J. D'Amico; Paul H. Kean, New York City, of counsel.

Robert Abrams, Atty. Gen. of N. Y., New York City, for defendant John J. O'Grady; Albert O. Marston, Asst. Atty. Gen., New York City, of counsel.

Rubin, Seidman & Dochter, New York City, for defendant Albert J. Sica; Ivan M. Dochter, J. Mitchell Rosenberg, Joel L. Hecker, New York City, of counsel.

LASKER, District Judge.

Drug Purchase, Inc. sues under 42 U.S.C. § 1983 for damages and injunctive relief for allegedly unconstitutional searches of its

warehouse on four occasions by officials for the New York State Board of Pharmacy (Board). The defendants are the Board inspectors who conducted the searches, the Assistant Attorney General who allegedly directed the searches, and the Secretary and Chief Executive Officer of the Board.

Drug Purchase moves for summary judgment on the issue of liability. The defendants cross-move for summary judgment dismissing the complaint.

## I. Facts

On November 6, 1975, Mitchell Dubroff, inspected the warehouse owned by Drug Purchase in the presence and with the consent of its employees. On November 7th, a quarantine of the drugs found in the warehouse was imposed by a New York State Supreme Court justice. The order of quarantine stated:

". . . LET the drugs which are the subject of this proceeding located in the basement premises 31 Washington Street, Brooklyn, New York, be placed under quarantine by the New York State Board of Pharmacy . . . and . . . LET . . . all persons upon whom this Order and the papers annexed hereto are served, be enjoined from removing or disposing of any of said drugs from that premises without further order of this Court."

On November 10th, 12th, 13th and 14th the Board inspectors reentered the warehouse without a warrant to take an inventory of the drugs under quarantine. Drug Purchase claims that these four entries were without its consent and violated its Fourth Amendment rights, giving rise to Section 1983 liability.

## II. Collateral Estoppel and Res Judicata

The defendants argue that this action is barred by a decision of Judge Cannella dismissing the suit brought by Drug Purchase against the Board alone, for injunctive relief based on the same facts alleged here.

*Drug Purchase, Inc. v. New York State Board of Pharmacy*, 76 Civ. 5845 (S.D.N.Y. April 10, 1978).

In that case, Judge Cannella held that "the complaint fails to allege the requisite 'case or controversy' between the parties" because the possibility of continued inspections was too remote. *Id.* Slip op. at 6–7. He also ruled that comity and federalism militated against granting an injunction against the state agency. *Id.* at 8.

Defendants contend that because of the earlier decision this action is barred under principles of res judicata and collateral estoppel. Drug Purchase answers that a decision "clearly premised on the fact that the defendant . . . was the State agency and the Court's view that the causes of action asserted against the agency in that case did not merit injunctive relief"[1] does not bar an action brought against individuals for damages. Plaintiff's Memorandum in Support of Motion for Summary Judgment, p. 7.

### A. Res Judicata

Although the parties do not distinguish the two, res judicata and collateral estoppel are analytically distinct. Res judicata, or "claim preclusion," bars relitigation of a cause of action brought (or which might have been brought) in a prior action in which there has been a final judgment on the merits. Collateral estoppel, or "issue preclusion," applies when the second action is brought on a different cause of action, and renders a prior action conclusive as to issues actually or necessarily litigated. *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1232–33 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 199 (1977); 1B Moore's Federal Practice ¶ 0.405[1], at 621–25 (2d ed. 1974).

For res judicata to apply, the parties to the second action must be identical to or in privity with the parties to the first action. *Expert Electric, Inc. v. Levine, supra,*

---

1. Plaintiff's characterization of the earlier decision focuses on Judge Cannella's reliance on the defendant having been the state agency. A more balanced reading of his opinion, however, indicates that his decision rested primarily on the failure to establish a threat of future injury.

554 F.2d 1227, 1233–34 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 199 (1977); *see Ellentuck v. Klein*, 570 F.2d 414, 425–26 (2d Cir. 1978). The defendants here were not joined in the first action and the Board is not a defendant here. Moreover, the cause of action asserted against the individual officials is distinct from that asserted against the Board in the earlier case. Consequently, res judicata does not apply to bar this action. To hold otherwise would in effect create a "mandatory joinder" rule of procedure, since, in order to avoid the res judicata bar, a plaintiff would be required to join all possible defendants when suing one party.

### B. Collateral Estoppel

█ Collateral estoppel does apply here, however, to limit the subject matter of this action. An issue decided by Judge Cannella, that the threat of future inspections was too remote to warrant injunctive relief, is raised here by Drug Purchase's demand for an injunction against the individuals. The only change in the factual circumstances occurring since the earlier decision is the passage of time. If affected at all, the threat of injury has become even more remote since the earlier decision. Consequently, since the issue whether the threat of future inspections is sufficiently concrete to warrant injunctive relief has been decided by Judge Cannella, the identical issue here must be decided in favor of defendants.

█ As noted earlier, the parties to this suit are not identical to those in the first action. However, since the abandonment of the "mutuality" doctrine, identity of parties is not necessary to the application of collateral estoppel, particularly when a party invokes a prior judgment "defensively in a second action against a plaintiff bringing suit on an issue he litigated and lost as plaintiff in a prior action." *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 324, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971); *Lo-*

*well v. Twin Disc, Incorporated*, 527 F.2d 767, 771 (2d Cir. 1975); *Kaiser Industries Corporation v. Jones & Laughlin Steel Corporation*, 515 F.2d 964 (3d Cir.) *cert. denied*, 423 U.S. 876, 96 S.Ct. 150, 46 L.Ed.2d 110 (1975).

Accordingly, defendants' motions for summary judgment dismissing the complaint are granted insofar as the complaint seeks injunctive relief.

### III. Violation of Section 1983

#### A. The Constitutionality of the Searches

Defendants argue that the undisputed facts establish that the searches did not violate the rights of Drug Purchase for two reasons.

First, that Drug Purchase's consent to the first search, which occurred on November 6th and is not challenged, extended to the subsequent four searches in question. After the November 6th inspection, Dubroff placed two locks on the door to the warehouse, and the lock belonging to Drug Purchase was removed. Defendants claim that this action constituted further indication of Drug Purchase's consent to the subsequent searches.

[7] If consent to the searches was given, it waived Drug Purchase's constitutional right to be free of those searches. Consequently, clear and convincing proof is required to establish that consent. *United States v. Mapp*, 476 F.2d 67, 77 (2d Cir. 1973). Defendants, however, only argue that the initial consent to the first search was not "revoked" and that Drug Purchase's failure to place its lock on the warehouse when the Board's two locks were placed there created the inference of Drug Purchase's consent to further inspections. This attenuated inference hardly constitutes the clear and convincing evidence that is required.

Second, defendants argue that the searches were authorized by the quarantine order quoted earlier, and by various provisions of the New York Education Law.[2]

2. N.Y. Educ. Law § 6813(1) (McKinney 1972) provides:

"1. Any drug, device or cosmetic that is adulterated, misbranded or may not be sold

■ The import of defendants' argument is not altogether clear. They appear to be arguing either that a warrant was unnecessary because of the statutory authorization or that the quarantine order was equivalent to a warrant. Whichever the argument, it does not prevail.

As to the first, even assuming that the statute authorized a warrantless search of Drug Purchase's warehouse,—an assumption not supported by the statutory language—the Supreme Court has held such statutes unconstitutional.[3] *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 325, 98 S.Ct. 1816, 1827, 56 L.Ed.2d 305 (1978); *Camara v. Municipal Court*, 387 U.S. 523, 534, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930 (1967); *See v. City of Seattle*, 387 U.S. 541, 545, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967). As in *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 358, 97 S.Ct. 619, 631, 50 L.Ed.2d 530 (1977),

"to give the statute that reading would call its constitutionality into serious question. We therefore decline to read it as

giving *carte blanche* for warrantless invasions of privacy. Rather, we give it its natural reading, namely, as an authorization for all forms of *seizure*, but as silent on the subject of intrusions into privacy." (Emphasis in original)

As to whether the order was equivalent to a warrant, the language of the order clearly only placed under quarantine the drugs. It did not refer to the premises of the warehouse except insofar as it located the drugs quarantined. It did not transfer possession of the warehouse to the Board. Nor did it expressly authorize the search of Drug Purchase's warehouse. Nevertheless, defendants contend that the quarantine order necessitated an inventory of the drugs quarantined, so that it impliedly authorized the entries. While it may be true that an inventory was necessary to fulfill the mandate of the quarantine order, it does not automatically follow that it was necessary to enter the warehouse without a warrant or Drug Purchase's consent. Since the defendants had double-locked the warehouse,

under the provisions of this chapter, may be seized on petition or complaint of the board and condemned in the supreme court of any county in which it is found. Seizure may be made:

   a. by process pursuant to the petition or complaint, or

   b. if the secretary or other officer designated by him has probable cause to believe that the article

   (1) is one which may not be sold under the provisions of section sixty-eight hundred seventeen of this chapter, or

   (2) is adulterated, or

   (3) is so misbranded as to be dangerous to health.

The article shall be seized by order of such officer. The order shall describe the article to be seized, the place where the article is located, and the officer or employee making the seizure. The officer, in lieu of taking actual possession, may affix a tag or other appropriate marking to the article giving notice that the article has been quarantined and warning all persons not to remove or dispose of it by sale or otherwise until permission for removal or disposal is given by the officer or the court. In case of seizures or quarantine pursuant to such order, the jurisdiction of such court shall attach upon such seizure or quarantine, and a petition or complaint for condemnation shall be filed promptly."

*Id.* § 6823 provides:

"For purposes of enforcement of this article, officers duly designated by the secretary are authorized:

   (1) to enter, at reasonable times, any factory, warehouse or establishment in which drugs, devices or cosmetics are manufactured, processed, packed, or held for introduction into commerce or are held after such introduction, or to enter any vehicle being used to transport or hold such drugs, devices or cosmetics in commerce; and

   (2) to inspect, at reasonable times, such factory, warehouse, establishment or vehicle and all pertinent equipment, finished and unfinished materials, containers, and labeling therein."

3. Although not addressed in the briefs (except for Dubroff's Memorandum of Law, p. 3) submitted on this motion, an issue remaining for trial is whether the drug industry is sufficiently regulated by the government so that Drug Purchase had no reasonable expectation of privacy in the premises where the drugs were housed. *See United States v. Biswell*, 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972) (firearms); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 76, 90 S.Ct. 774, 776, 25 L.Ed.2d 60 (1970) (liquor); *People v. Curco Drugs, Inc.*, 76 Misc.2d 222, 350 N.Y.S.2d 74, 83 (Crim.Ct.1973) (drugs).

they had ample time to obtain a warrant to carry out the duties which they claim to have been created by the quarantine order.

### B. Sica's liability

■■■ Albert J. Sica, the Secretary and Chief Executive Officer of the Board is alleged to be liable for the searches as a supervisory official. Since the doctrine of respondeat superior does not apply in Section 1983 cases, a plaintiff must establish the personal responsibility of supervisory personnel. *Duchesne v. Sugarman*, 566 F.2d 817, 831 (2d Cir. 1977); *Arroyo v. Schaefer*, 548 F.2d 47, 51 (2d Cir. 1977); *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973); *see Monell v. Department of Social Services*, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–2038, 56 L.Ed.2d 16 (1978). Consequently, to prevail against Sica, Drug Purchase must show

> "that it was [his] *own* conduct which resulted in the constitutional violations. It is not necessary for § 1983 liability that [Sica] directed any particular action with respect to [Drug Purchase], only that [he] *affirmatively* promoted a policy which sanctioned the type of action which caused the violations. In short this is not a case of indifference, that is, a failure to act in the face of misconduct by subordinates, but is rather a case of affirmative policy-making which may have caused the misconduct."

*Duchesne v. Sugarman, supra,* at 831 (Emphasis in original).

■■■ Drug Purchase argues that Sica is personally responsible for the searches because he "has taken no action to avoid their repetition." Plaintiff's Memorandum In Support of Motion for Summary Judgment, p. 29. This is simply insufficient to establish that Sica had an affirmative policy at the time of the searches that caused them to occur as they did.

Accordingly, Sica's motion for summary judgment is granted.[4]

### IV. Immunities

### A. O'Grady

■■■ John J. O'Grady is an Assistant Attorney General who is alleged to have directed the illegal searches. Although he denies having authorized the searches, that question need not be decided. Since it is not disputed that he was acting as a prosecutor in this matter, he is entitled to absolute immunity from liability. *Imbler v. Pachtman*, 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976).

Accordingly, O'Grady's motion for summary judgment dismissing the complaint as to him is granted.

### B. The Inspectors

The parties appear to agree that the three inspectors who entered the warehouse are entitled to the qualified immunity enjoyed by government officials set forth in *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975):

> ". . . [an official] is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ."

*See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

■■■ Drug Purchase has shown no evidence establishing that the defendants acted maliciously. However, as to the other

---

4. Under some circumstances, a decision granting a motion for summary judgment on these grounds would be inappropriate without affording the plaintiff an opportunity to conduct discovery in order to permit determination whether these were acts performed by the defendant which amounted to the requisite personal responsibility. Those circumstances are not present here. Here, there is no dispute that Drug Purchase has had exhaustive discovery in the action dismissed by Judge Cannella. Indeed, Sica himself was deposed in that action. Plaintiff's Memorandum in Support of Motion for Summary Judgment, p. 2.

qualifications of defendants' immunity, Drug Purchase argues that the individual inspectors

> "were well aware of the fact that at no time previously had they entered the premises of any person without notice to such person. . . . Had there been any question in their minds as to the propriety of an inspection without notice to the inspectee, the refusal of the FDA officials to accompany them . . . should have dispelled that impression."

Plaintiff's Memorandum in Support of Motion for Summary Judgment, p. 28. Each of the inspectors has submitted documents establishing that they were told that the searches were authorized. Affidavit of Clement J. Deodati ¶ 3 (April 26, 1979); Affidavit of Victor J. D'Amico ¶ 3 (October 24, 1979); Rule 9(g) Statement of Mitchell Dubroff ¶ 12. Therefore, questions of fact have been raised as to whether the inspectors reasonably should have known that the inspections were unconstitutional, and summary judgment either for Drug Purchase or for the three inspectors is inappropriate.[5]

Accordingly, the motions of Drug Purchase, Mitchell Dubroff, Victor D'Amico and Clement Deodati are denied. The motions of John J. O'Grady and Albert Sica for summary judgment are granted.

It is so ordered.

---

**5.** Some of the defendants argue that they cannot be found liable here by virtue of N.Y. Educ. Law § 6813(5) (McKinney 1972), which provides:

> "In any proceeding against the board, or the secretary, or an agent of either, because of seizure, or quarantine, under this section, the board, or the secretary, or such agent shall not be liable if the court finds that there was probable cause for the acts done by them."

If liability is found under Section 1983, however, this statute would not shield defendants, but would be preempted by federal law.