Lewis R. CRIST, Director, Division of Insurance, Department of Economic Development, State of Missouri, as Receiver for Transit Casualty Company, Plaintiff,

v.

J. HENRY SCHRODER BANK & TRUST COMPANY, Defendant and Third Party Plaintiff,

v.

CANDON SYNDICATE N.V., Third Party Defendant.

No. 87 Civ. 1845 (WK).

United States District Court, S.D. New York.

May 3, 1988.

George F. Hritz, Robert B. Murray, Jr., Davis Markel & Edwards, New York City, for plaintiff.

Ronald J. Offenkrantz, Michael H. Smith, Spitzer & Feldman P.C., New York City, for defendant and third party plaintiff.

James A. Shanman, Sharfman, Shanman, Poret & Siviglia, New York City, for third party defendant.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff, Director of the Division of Insurance, Department of Economic Development, State of Missouri (the "Division of Insurance"), brings this action in his capacity as Receiver for Transit Casualty Company ("Transit"), an insolvent Missouri insurance company, alleging that Defendant J. Henry Schroder Bank & Trust Company ("Bank"), a New York based bank, wrongfully dishonored sight drafts on two letters of credit it had issued in Transit's favor. Third party defendant Candon Syndicate N.V. ("Candon"), a Netherlands Antilles corporation engaged in the business of insurance and reinsurance in New York, had directed the issuance of the letters of credit. The case is before us on plaintiff's motion for summary judgment against the defendant Bank and on the third party defendant's motion for leave to amend its answer to the third party complaint. For the reasons stated below, both motions are granted.

## FACTS

On December 31, 1984, upon the application of Candon, the Bank issued two "Clean, Irrevocable, and Unconditional" standby letters of credit in favor of Transit (the "Letters of Credit") for the purpose of guarantying certain reinsurance obligations of Candon to Transit.[1] On Novem-

---

1. The Letters of Credit were established in the amounts, respectively, of $417,538.00 and $2,169.00.

ber 27, 1985, the Bank, acting on the instructions of Candon, notified Transit at its offices in Los Angeles that the Letters of Credit would expire at midnight on December 31, 1985 and that they would not be renewed.

On December 3, 1985, Transit was declared insolvent in the Circuit Court of Cole County, Missouri. By Amended Order of Liquidation and Appointment of Permanent Receiver (the "Court Order"), Mary C. Hall, Acting Director of the Division of Insurance, was appointed Receiver for Transit (the "Receiver"), with the power, *inter alia*, to file suit in furtherance of the interests of the receivership. The Court Order named John C. Cozad as Special Deputy Receiver. Plaintiff Crist succeeded Hall as Director of the Division of Insurance on January 6, 1986, and thus succeeded her as Receiver for Transit as well.

On December 26, 1985, the Receiver sent to the Bank, by overnight Federal Express mail, two sight drafts, dated December 23, 1985, demanding payment under the Letters of Credit.[2] The sight drafts were drawn to the order of "Missouri Division of Insurance, Receiver for Transit Casualty Company" and were signed by one P. Jan Brookes, with no titular designation other than "Authorized Signature." The Receiver sent with the drafts an uncertified photocopy of the Court Order. The drafts instructed the Bank to wire transfer the proceeds to United Missouri Bank of Kansas City, Missouri, "Special Account # 1—Missouri Division of Insurance, Receiver for Transit Casualty Company."

The Bank received the sight drafts and the copy of the Court Order on Friday, December 27, 1985, at 11:35 a.m..[3] After several of its officers reviewed the documents, the Bank determined on January 2, 1986 not to honor the sight drafts. The letters of credit had, in the interim, expired. On January 3, 1986, the Bank sent, by regular mail, notice to the Receiver of its refusal to honor the sight drafts, setting forth the following reasons for its decision:

1) Drafts executed by P. Jan Brookes on behalf of Missouri Division of Insurance Receiver for transit [sic] Casualty Company—Beneficiary of our credit is Transit Casualty Co.

2) Presented a photocopy of "Amended order of liquidation and Appointment of Permanent Receiver" which designates Mary C. Hall, Acting Director of the Division of Insurance, Department of Economic Development, State of Missouri and John C. Cozad as Special Deputy Receiver.

On the same day that the Bank sent its notice of dishonor to the Receiver, the Division of Insurance mailed a letter to the Bank, which was received by the Bank on January 10, requesting that the Receiver be formally substituted for Transit as the beneficiary of the Letters of Credit.

## DISCUSSION

I. *Plaintiff's Motion for Summary Judgment*

Before turning to a discussion of the issues raised by plaintiff's motion, we note

---

**2.** On the same day that the sight drafts were sent, an order was issued by the Supreme Court of the State of New York appointing the New York State Superintendent of Insurance as "Ancillary Receiver" for Transit, with the power to take possession of all of Transit's property and assets located in New York. Defendant suggests that this divested the Receiver (i.e. the Missouri Division of Insurance) of the right to draw on the Letters of Credit, and that the Receiver is not the real party in interest. We reject this contention, and any doubt it might cast on our diversity jurisdiction, as contrary to New York law, which provides that the "domiciliary receiver" (here, the Receiver) is vested with title to the insolvent insurer's New York assets and may sue in this state to recover such assets. New

York Insurance Law §§ 7410(b), (c) (McKinney 1985).

**3.** Under the Bank's arrangement with Candon, the Bank was to notify Candon of the presentment of any documents against the Letters of Credit. Pursuant to this obligation, the Bank notified Candon of the Receiver's demand for payment under the Letters of Credit. On December 31, 1985, at 4:20 p.m., the Bank received a telex from Candon that it did not owe the amounts reflected on the sight drafts, yet none of the Bank's officers were aware of this transmittal until January 2, 1986. The Bank did not base its refusal to honor the sight drafts on Candon's denial of any outstanding debt to Transit.

that under the doctrine of "independent contracts" we are concerned for purposes of this motion only with the propriety of the Bank's dishonor of the sight drafts presented by the Receiver; we are not concerned with the existence of any underlying debt between Candon and Transit, nor with the obligations owed by Candon to the Bank (and vice versa) under the contract to establish the Letters of Credit in Transit's favor. *First Commercial Bank v. Gotham Originals, Inc.* (1985) 64 N.Y.2d 287, 294, 486 N.Y.S.2d 715, 719, 475 N.E.2d 1255, 1259.

In support of his motion for summary judgment, plaintiff first argues that the Bank is precluded from asserting that the sight drafts did not comply with the terms and conditions of the Letters of Credit, because the Bank failed expeditiously to notify the Receiver of its refusal to honor the sight drafts. Second, plaintiff argues that even if the issue of whether the Bank wrongfully refused to honor the sight drafts is reached, the documents presented by the Receiver to the Bank were in compliance with the terms and conditions of the Letters of Credit and thus the sight drafts should have been honored.

█ Although we agree with the defendant Bank that an issue of material fact exists as to whether the Receiver afforded the Bank a reasonable amount of time to examine the documents for noncompliance prior to their expiration,[4] we further hold that plaintiff is nonetheless entitled to summary judgment because the grounds stated by the Bank for its decision are insufficient as a matter of law as a basis for dishonor.

As to its refusal to honor the sight drafts, the Bank argues that the documents tendered by plaintiff did not on their face strictly comply with the Letters of Credit. The Bank claims it dishonored the sight drafts not merely because they were signed on the Receiver's behalf (rather than on Transit's behalf), but also because they were signed by P. Jan Brookes, whose authority to sign the sight drafts did not appear on the face of the documents submitted by the Receiver. The Bank claims it acted properly in refusing to honor sight drafts that appeared to be drawn by an unauthorized party.

The Bank supports its argument by pointing to the Court Order submitted by the Receiver along with the sight drafts. The Court Order named only Mary C. Hall and John C. Cozad as persons with authority to deal with the assets of Transit. It did not name Brookes as having such authority. The Bank argues that Brookes could not have been delegated authority to handle Transit's assets, because only the Receiver is vested with title to Transit's assets and only the Receiver or his Special Deputies may exercise and possess the powers given to the Receiver.

The starting point for any evaluation of an issuing bank's determination to dishonor

---

4. Under Article 16(c) of the Uniform Customs and Practice for Commercial Documentary Credits, (1983 Revision) ("UCP"), which under the terms of the letters of credit controls this action, a bank is allowed "a reasonable time" in which to examine the documents submitted by the party demanding payment and to determine whether or not to honor those documents. Although a bank which subsequently fails to meet its duty under UCP Article 16(d) to give prompt notice "by...expeditious means" of defects or nonconformities may be "estopped...from asserting that the documents did not comply with the letter of credit," *Bank of Cochin, Ltd. v. Manufacturers Hanover Trust Co.* (2d Cir.1986) 808 F.2d 209, 213, the duty to notify expeditiously is obviously triggered only *after* the issuing bank has, within a "reasonable time," decided to refuse payment on the documents presented. We certainly cannot say as a matter of law that the Bank failed to determine within a "reason-able time" that the sight drafts were noncomplying, having had less than three business days prior to the expiration of the letters of credit in which to make its determination. Assuming the Receiver did not afford the Bank a "reasonable time" to examine the sight drafts before the Letter of Credit expired, the Bank was entitled to make its determination to dishonor the sight drafts after the Letter of Credit expired. At that point, even if the Bank chose a less than expeditious means of notifying the Receiver, the Receiver's rights were not prejudiced by that choice, because by then it could do nothing to remedy the nonconformity that the Bank thought it had found in the sight drafts. In any event, this preliminary issue of fact prevents us from reaching, on this motion, the question of whether the Bank is estopped (by virtue of its subsequent sluggish notice to the Receiver) from asserting that the sight drafts were noncomplying.

a draft on a letter of credit is its notice of dishonor. The notice of dishonor "must state the discrepancies in respect of which the issuing bank refuses the documents," otherwise "the issuing bank shall be precluded from claiming that the documents are not in accordance with the terms and conditions of the credit." UCP Articles 16(d) and (e). Indeed, "it is well settled that where communications dishonoring drafts do not refer to alleged defects, such defects are waived, and cannot be subsequently asserted." *Bank of Canton Ltd. v. Republic National Bank of New York* (S.D.N.Y.1980) 509 F.Supp. 1310, 1317. We are therefore limited to evaluating the validity of the two grounds stated by the Bank in its notice of dishonor.

■ The first of the two stated grounds asserts that the sight drafts are noncomplying because they are made payable to the order of the Receiver, rather than to the beneficiary of the letters of credit, Transit. We hold that this is not a valid ground for dishonoring the sight drafts.

Under the law of this Circuit and of New York, if the documents presented by a beneficiary to the issuer of a letter of credit do not strictly comply with the terms and conditions of the letter of credit, the issuer is entitled to refuse payment. *Beyene v. Irving Trust Co.* (2d Cir.1985) 762 F.2d 4 (bill of lading which misspelled the beneficiary's name of "Sofan" as "Soran" did not strictly comply with the letter of credit); *Bank of Cochin, Ltd. v. Manufacturers Hanover Trust Co.* (S.D.N.Y.1985) 612 F.Supp. 1533, aff'd, (2d Cir.1986) 808 F.2d 209 (documents presented by "St. Lucia Enterprises" did not strictly comply with letter of credit established for "St. Lucia Enterprises, Ltd."). The obligation of the issuer under a letter of credit is to examine the beneficiary's documents to see that they strictly

comply on their face with the terms of the credit. Article 16(b) of the UCP states:

If, upon receipt of the documents, the issuing bank considers that they *appear on their face* not to be in accordance with the terms and conditions of the credit, it must determine, *on the basis of the documents alone*, whether to take up such documents, or to refuse them and claim that they appear on their face not to be in accordance with the terms and conditions of the credit.

The issuer is not required to go beyond a facial examination of the tendered documents in determining whether payment is warranted. "In determining whether to pay, the bank looks solely at the letter and the documentation the beneficiary presents, to determine whether the documentation meets the requirements in the letter." *Marino Indus. Corp. v. Chase Manhattan Bank, N.A.* (2d Cir.1982) 686 F.2d 112, 115.

Yet even under the strict compliance standard, a variance is permitted between the documents specified in a letter of credit and the documents presented thereunder where "there is no possibility that the documents could mislead the paying bank to its detriment." *Bank of Cochin, Ltd. v. Manufacturers Hanover Trust Co.*, 612 F.Supp. at 1541. In particular, a party who has succeeded by operation of law to the rights of the beneficiary of a letter of credit may demand payment, even though the terms of the credit provide for payment only to the beneficiary. See *American Bell International v. Islamic Republic of Iran* (S.D.N.Y.1979) 474 F.Supp. 420, 423–424 (Islamic Republic of Iran, which succeeded by operation of law to rights of Imperial Government of Iran, entitled to draw under letter of credit); *Pastor v. National Republic Bank of Chicago*, 76 Ill.2d 139, 28 Ill.Dec. 535, 390 N.E.2d 894 (1979) (receiver for insolvent insurance company entitled to draw under letter of credit).[5]

---

5. The *Pastor* case is directly on point. There, a New York court, pursuant to the laws of New York, appointed the Superintendent of Insurance of the State of New York liquidator of an insolvent insurance company, which was a beneficiary under a letter of credit. The liquidator was vested with all property and contractual rights of the insolvent insurer. The liquidator presented a sight draft to the issuer of the letter of credit, and the customer under the letter of credit sued for an injunction against payment of the sight draft. The customer argued that, "since the credit did not expressly provide that it was transferable or assignable, [the beneficiary] alone was entitled to its benefits and to draw drafts against it and that this right could not be

*Cf. Federal Deposit Insurance Corporation v. Bank of Boulder* (D.C.Colo.1985) 622 F.Supp. 288 (suggesting that receiver, which succeeded by operation of law to rights of failed bank, was entitled to draw under letter of credit).

Thus, the first ground stated by the Bank—that the Receiver was not the beneficiary of the letters of credit—fails as a matter of law. The Court Order (there having been no objection to the lack of certification [6]) was evidence enough that the Receiver had succeeded by operation of law to Transit's rights under the letters of credit, and thus the Bank could not avoid honoring the sight drafts on this basis.

The second ground stated by the Bank in its notice of dishonor—that it had been "presented with a photocopy" of the Court Order naming the Receiver and her Special Deputy Receiver—does not make any sense when read on its own. As noted above, the Bank argues that the second ground was meant, in combination with the first stated ground, to convey doubt as to P. Jan Brookes' authority to sign the sight drafts, since her name was not found in the Court Order. Plaintiff asserts that the Bank is precluded from raising the authority issue as a basis for upholding its dishonor of the sight drafts because the Bank did not explicitly state such a basis in its notice of dishonor. However, despite the implication that the Bank's real basis for its decision

was that the Receiver rather than Transit sought payment under the Letter of Credit,[7] we are constrained to accord to the Bank the benefit of an inference that the two stated objections in the Bank's notice, when read conjunctively, assert that the Bank dishonored the sight draft because it questioned Brookes' authority to sign them. *See Corporacion De Mercadeo Agricola v. Mellon Bank International* (2d Cir.1979) 608 F.2d 43, 49 (no waiver if notice of dishonor "fairly places into issue" agent's authority). Even under this interpretation of the Bank's reasons for asserting noncompliance, however, we find the Bank wrongfully dishonored the sight drafts.

■ While the Bank was not provided with evidence of Brookes' authority to sign the sight drafts, it was not entitled to dishonor the drafts on that ground. In the first place, the terms of the letters of credit, which were drafted by the Bank, did not call for any supplementary evidence of a signatory's authority. The cases cited by the Bank as support for this ground of dishonor, *see, e.g., Far Eastern Textile v. City National Bank and Trust Co.* (S.D. Ohio 1977) 430 F.Supp. 193, all involved letters of credit which by their terms required that drafts be accompanied by certain documents signed by specified persons. By contrast, these letters of credit were "unconditional." Assuming that

exercised by the liquidator." 76 Ill.2d at 145, 28 Ill.Dec. at 537, 390 N.E.2d at 896. The court rejected the customer's arguments and found that the sight draft complied with the letter of credit. It noted that at the time the New York court had ordered the transfer of the beneficiary's property and rights to the liquidator, the beneficiary had a right to demand and receive payment under the letter of credit. It further stated that "[t]here is no reason why this right should not pass to the liquidator as a claim belonging to the company's estate to be collected by the liquidator for distribution according to law." 76 Ill.2d at 149–50, 28 Ill.Dec. at 539, 390 N.E.2d at 898.

6. Although the Bank has stressed in its briefs on this motion that an *uncertified* copy was supplied, we find that it waived any such objection by failing to so state in its notice of dishonor. The mere use of the word "photocopy" in the second ground of dishonor, followed by a de-

tailed statement of what the photocopied Court Order provided, cannot reasonably be interpreted as an objection to the lack of a clerk's certificate.

7. The Bank's objections do strongly suggest that it was dishonoring the sight drafts because they were submitted by the Receiver rather than by Transit itself. In the Bank's briefs, as well, the Bank suggests that it rejected the sight drafts because "[t]he named beneficiary on the Letter of Credit was Transit Casualty Company, P.O. Box 60086, Los Angeles, California, not the Director of the Missouri Division of Insurance, as Receiver for Transit Casualty Corp." (Bank's brief at 15) The Bank notes that there is no connection between Transit and the State of Missouri on the face of the Letters of Credit. In short, the Bank suggests that it dishonored the sight drafts because it found that the *Receiver*— not Brookes in particular—lacked the authority to sign the sight drafts.

Transit itself had presented the sight drafts, the Bank would not have been able to point to any provision in the letter of credit requiring that a particular officer of that corporation sign the drafts or that any evidence of that officer's authority be provided. Accordingly, it follows that in the absence of inherently dangerous circumstances which might warrant implying such a requirement, the Bank could not have lawfully based a decision to dishonor such sight drafts on the absence of evidence of the signatory's authority.

Nor should a different rule apply where the director of a government agency has succeeded to the corporation's rights by operation of law, as a receiver, and must of necessity delegate to subordinates within the agency the various tasks involved in exercising those rights. As we noted above, the Court Order was ample evidence that the Receiver had succeeded by operation of law to the rights of Transit, and a review of the sight drafts leaves no doubt that anyone other than the Receiver could collect the proceeds of the letters of credit pursuant to those sight drafts. Each sight draft directed the Bank to make payment to the order of "Missouri Division of Insurance, Receiver for Transit Casualty Company." The drafts provided instructions for the Bank to wire-transfer proceeds of the drafts to a Missouri bank for deposit into "Special Account # 1—Missouri Division of Insurance, Receiver for Transit Casualty Company—# 119 189–6." Finally, the drafts were not signed by P. Jan Brookes personally, but as "Authorized Signature" on behalf of "Missouri Division of Insurance[,] Receiver for Transit Casualty Company."

In sum, there was no possibility that, had the Bank honored the sight drafts, it would have risked sending money to Brookes herself, rather than to the Receiver. Thus, even though Brookes herself was not named in the Court Order, there was no risk that the proceeds of the letters of credit would not reach the hands of those in whom the Court Order had vested title to Transit's assets, nor any risk that those proceeds would later be unavailable for reimbursement in the event of some dispute over the Receiver's right to draw on them. In the absence of such risk, the Bank should have honored the sight drafts. Plaintiff's motion for summary judgment against the defendant Bank is therefore granted.

## II. Candon's Motion for Leave to File an Amended Answer:

Third party defendant Candon has moved for leave to file an amended answer to the third party complaint, in order to add a claim against plaintiff. Although styled as an "offset" claim, what Candon seeks is reimbursement from plaintiff for any amounts recovered by the Bank on its third party claim which exceed the amount Candon actually owes to Transit. Plaintiff opposes this motion on the basis of injunctions issued by the courts of Missouri and New York barring actions against Transit's estate outside the liquidation proceedings in Missouri. The motion is granted, for two reasons.[8]

First, it is well settled that a state court does not have the power to enjoin a federal court from hearing a claim where the latter has jurisdiction over the parties and the subject matter. *General Atomic Company v. Felter* (1977) 434 U.S. 12, 98 S.Ct. 76, 54 L.Ed.2d 199; *Donovan v. Dallas* (1964) 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409. This principle has been applied to allow

---

**8.** Candon would have us grant this motion on the basis of a provision of New York law which has been interpreted to allow a claim for a set-off, as opposed to a counterclaim seeking affirmative relief, to be litigated in an action brought by the receiver for an insolvent insurer outside the liquidation proceedings and in the face of an injunction such as those to which plaintiff points. *See* New York Insurance Law § 7427(a) (McKinney 1985); *Schenck v. Coordinated Coverage Corporation* (1st Dep't 1975) 50 A.D.2d 50, 376 N.Y.S.2d 131. However, such offset is not allowed for claims against the insurer which were not mature as of the date of the liquidation order, and which would not have entitled the party asserting the offset to file a claim in the liquidation proceedings. New York Insurance Law § 7427(b)(1). Here, Candon had no claim against Transit at the time of the liquidation order (the "Court Order"), since the Receiver had not yet attempted to draw on the letters of credit.

federal actions against insurers involved in liquidation proceedings, or against their insured, where state courts had issued injunctions similar to those in place in the case at bar. *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Insurance Company* (7th Cir.1979) 600 F.2d 671; *Tran v. Antoine Aviation Company Inc.* (S.D.N.Y.1985) 624 F.Supp. 179; *Niemczyk v. Coleco Industries, Inc.* (N.D.N.Y.1984) 581 F.Supp. 717.

█ Second, although in certain circumstances principles of comity or abstention might nonetheless warrant observing the state court's injunction, *see e.g. Tran, supra,* at 180, the balance of equities in the instant situation clearly counsels us to allow Candon to assert its claim in the context of this action. Candon will indeed be severely prejudiced if it must reimburse the Bank for the full amount of the letters of credit and then be left to recoup any amount it did not originally owe to Transit in the liquidation proceedings, where it is sure to obtain but pennies on the dollar. Such a scenario seems especially unjust in the face of Candon's assertion that it owes nothing to Transit, an assertion that plaintiff has thus far declined to rebut in any substantial manner. Should the evidence at trial ultimately show that Transit was indeed entitled to draw on the majority of the proceeds of the letters of credit, the equities might tip back in favor of preserving the integrity of the liquidation proceedings. That would be an appropriate time to reconsider whether Candon's claim should be struck in deference to the state injunctions. In the interim, however, the presence of that claim in this lawsuit seems to us likely to be a healthy catalyst to resolution of the underlying dispute between Candon and Transit in the fairest and most expeditious manner.

### CONCLUSION

Plaintiff's motion for summary judgment against defendant J. Henry Schroder Bank & Trust Company is granted. Let plaintiff submit an appropriate judgment on ten days notice. Third party defendant Can-

don's motion for leave to file an amended answer is also granted, and the proposed "Amended Third Party Answer and Claim Against Plaintiff" appended as Exhibit 1 to the Affidavit of James A. Shanman submitted in support of Candon's motion is deemed to be filed as of the date of this order. The parties shall appear for a pretrial conference on June 7, 1988 at 4:30 p.m. in Courtroom 619 to discuss the status of the remaining claims in this lawsuit.

SO ORDERED.