748 F.Supp. 709 (1990)
LANDMARK BANK, Plaintiff,
v.
NATIONAL CREDIT UNION ADMINISTRATION, National Credit Union Administration Board, New American Federal Credit Union, et al., Defendants.
No. 89-1064-C(6).
United States District Court, E.D. Missouri, E.D.
October 3, 1990.
Robert Selsor, Suelthaus & Kaplan, P.C., St. Louis, Mo., for Landmark Bank.
Charles Merz, Padberg, McSweeney, Slater & Merz, St. Louis, Mo., for Plotkin, Medigroup, and Quixotic Corp.
Timothy McCollum, Office of Gen. Counsel, NCUA, Washington, D.C., for NCUA and NCUAB.
Gary Feder, Ziercher & Hocker, St. Louis, Mo., Lee Kline, Gartenberg & Kline, Clayton, Mo., for NCUA, NCUAB, NAFCU and Hornbrook.
*710 Joseph Conran and Robert Livergood, Husch, Eppenberger, Donohue, Cornfeld & Jenkins, St. Louis, Mo., for M-S, Westwinds, Shepard and Group 3.

MEMORANDUM
GUNN, District Judge.
This declaratory judgment action is currently before the Court on cross motions for summary judgment filed by defendants National Credit Union Administration ("NCUA"), National Credit Union Administration Board ("NCUAB"), New American Federal Credit Union ("New American") and Timothy P. Hornbrook ("Hornbrook") and by plaintiff Landmark Bank ("Landmark"). For the following reasons, the Court denies plaintiff's motion and grants defendants' motion, and enters judgment in favor of defendants.
This case arises out of Landmark's refusal to honor a letter of credit it issued for the account of its customer Medigroup Enterprises, Inc. ("Medigroup") to the benefit of New American. Because the relationships among the parties, the events giving rise to this action, and the procedural posture of the case all are somewhat complex, the Court will set out the facts in these three discreet categories as succinctly as possible before turning to a discussion of the applicable law.

A. STATEMENT OF FACTS.

1. The Parties.

Landmark, successor to Landmark North County Bank and Trust Company, is a Missouri banking corporation with offices in St. Louis County, Missouri. New American was a federally chartered credit union located in Jersey City, New Jersey.
On August 26, 1987, having found New American to be insolvent, the NCUAB placed New American into involuntary liquidation and appointed itself liquidating agent for the credit union, pursuant to the provisions of 12 U.S.C. § 1787(a)(1). On December 8, 1988, NCUAB appointed Hornbrook as its agent and as New American's general manager. The letter of appointment further authorized Hornbrook to take possession and enforce collection of all assets of New American.
Medigroup is a Missouri corporation with offices in St. Louis County, Missouri. Martin Plotkin is a Missouri citizen residing in St. Louis County, Missouri and Medigroup's president. Lynn Plotkin is a Missouri citizen residing in St. Louis County, Missouri. Quixotic Corp. is a Missouri corporation with an agent and office for service of process in St. Louis County, Missouri. Martin Plotkin also serves as president of Quixotic.
Joseph A. Shepard is a Missouri citizen and general partner in two Missouri limited partnerships, M-S Associates and Westwinds Park Associates. Group Three Housing Development Corporation is a Missouri corporation which is also a general partner in both Westwinds and M-S.
The letter of credit at issue herein appears to have been issued on the account of Medigroup to insure payment on underlying transactions involving M-S Associates and Westwind Park Associates which Medigroup guaranteed and for which New American acted as lender. Furthermore, Martin and Lynn Plotkin, individually, and Martin Plotkin as president of Quixotic, guaranteed repayment to Landmark of any money drawn on the basis of the letter of credit.

2. The Events Giving Rise to this Action.

On May 9, 1983, Landmark issued a non-transferrable, irrevocable letter of credit bearing number 5098 in favor of New American (the beneficiary) for the account of Medigroup in the aggregate sum of Seven Hundred Fifty Thousand Dollars ($750,000.00). The salient provisions of the letter of credit included:
(1) any sight draft drawn upon Landmark by virtue of the letter of credit must be accompanied by the letter of credit and by the sworn statement of beneficiary's general manager indicating Medigroup's default in its underlying obligations to the beneficiary.
*711 (2) the draft must state that it is "drawn under letter of credit no. 5098 dated May 9, 1983."
(3) the draft must be presented to Landmark at Lewis & Clark and Jennings Station Road, St. Louis, Missouri 63136 on or before the expiration date stated in the letter.
(4) the letter of credit's initial expiration date was June 9, 1984. Thereafter, the letter provided for extensions at twelve-month intervals, expiring on each successive June 9th, unless Landmark notified New American in writing by registered mail of Landmark's election not to renew ninety days prior to the applicable expiration date. Upon receipt of such notice, New American could draw upon the letter of credit not earlier than ten days prior to the applicable expiration date. Such a draw had to be accompanied by the letter of credit and a sworn statement that Medigroup's underlying obligations to New American did not exceed the amount of the draft, and that Medigroup had not provided New American with an acceptable replacement letter of credit.
(5) except so far as otherwise expressly stated therein, the letter of credit is subject to the Uniform Customs and Practices for Documentary Credits as fixed by the International Center of Commerce in effect as of May 9, 1983.
By letter dated August 26, 1987, the NCUAB notified New American that it had been found to be insolvent and that "NCUA hereby revokes the charter of [New American] and orders it into involuntary liquidation.... The NCUAB appoints itself as Liquidating Agent of [New American]."
Subsequently, by letter dated December 8, 1988, NCUAB appointed Hornbrook as its agent and as general manager of New American with authority to take possession and enforce collection of New American's assets. One of those assets is the letter of credit at issue in this case.
On March 8, 1989 Landmark sent notice to New American of its intention not to renew the letter of credit. In that letter, Landmark noted that it was sending a copy to Timothy P. Hornbrook due to his "claimed interest in the letter of credit as liquidating agent of the beneficiary." Landmark stated further: "This letter of credit will fully and finally expire, at our counter, on June 9, 1989. As of June 10, 1989, this letter of credit will no longer be available for presentation."
On May 17, 1989, Hornbrook presented to Landmark Bank New American's sight draft bearing the inscription "drawn under Letter of Credit No. 5098" and signed by Hornbrook as "general manager of beneficiary." Along with the draft, Hornbrook presented the original letter of credit and his sworn statement in which he set forth the events resulting in his appointment as agent of NCUAB and general manager of New American. Hornbrook further indicated that "pursuant to 12 U.S.C. § 1751 et seq., the Beneficiary's charter has been revoked but has not been cancelled and, therefore, the principal for whom I am acting continues to exist." Hornbrook indicated that the Debtor (Medigroup) had defaulted on its obligations to New American under one or more of the three corporate guaranties to New American. Hornbrook went on to make all of the requisite recitations called for in the letter of credit, and also presented a copy of the December 8, 1988 letter from Harvey J. Baine III, Regional Director of the NCUA, to Hornbrook informing him of his appointment as liquidating agent and general manager of New American. Finally, he presented the April 25, 1989 affidavit of Roger W. Jepsen, Chairman of the NCUA, directed to the vice president of Landmark's letter of credit department, certifying that New American's charter had not been cancelled but continued in force and effect and that the credit union remained "a legal entity authorized by law to act and be acted upon, to sue and be sued."
By letter dated May 31, 1989, Landmark Bank notified Hornbrook that it would not honor New American's draft on the letter of credit. Landmark cited as its reasons for dishonor the following:
(1) The documents submitted with the sight draft "appear on their face to be *712 inconsistent with one another and therefore the Bank considers the documents as not appearing on their face to be in accordance with the terms and conditions of the Letter of Credit." Specifically, in support of this statement, Landmark points to the "inconsistency" contained in Hornbrook's allegation that New American's charter had been revoked but not cancelled. In addition, based upon the revocation of New American's charter, Landmark concluded that the credit union was no longer a viable legal entity.
(2) Landmark further questioned the validity of Hornbrook's appointment as general manager of New American, both because he had not offered any proof of his appointment by New American's board of directors, or other similar governing body, and also because of Landmark's hypothesis that because New American no longer existed (its charter having been revoked), it could not have a general manager.
(3) The sight draft was improperly endorsed insofar as it was endorsed by Hornbrook and not by New American.
(4) Under the terms of the letter of credit, upon Landmark's notification of its intention not to renew, the draw could occur "not earlier than ten (10) days prior to the then expiration date," with the applicable date being June 9, 1989.
(5) The sworn statement did not comply with the letter of credit insofar as it did not indicate that the amount of underlying obligations secured by the corporate guaranties did not exceed the amount of the draft and that New American had not been provided with an acceptable replacement letter of credit.
Based upon Landmark's failure to honor the May 17, 1989 draft, Hornbrook presented another draft dated June 6, 1989 in the amount of $750,000.00. This draft also bore the inscription "Drawn under Letter of Credit No. 5098 dated May 9, 1983" and was signed by Hornbrook as general manager of New American Federal Credit Union. Accompanying the June 6, 1989 draft was Hornbrook's sworn statement that he was general manager of New American; that the corporate guaranties remained in effect, that the amount of underlying obligations secured by the corporate guaranties did not exceed the amount of the draft, and that no acceptable replacement letter of credit had been provided to New American.
By letter dated June 9, 1989, Landmark again declined to honor the letter of credit, again citing as its reason the fact that New American's charter had been revoked and that New American was, therefore, no longer a legal entity. Landmark also questioned Hornbrook's appointment as general manager of New American for the same reasons previously set forth in its letter of May 31. Furthermore, the bank indicated that it had during the time between the May and June 6th drafts filed this suit in which it sought "a judicial resolution of the issue of whether or not the New American Federal Credit Union exists as a viable legal entity capable of submitting a draft under the Letter of Credit and other applicable law."

3. The Procedural Posture of this Case.

Landmark Bank filed this declaratory judgment action on June 2, 1989 against National Credit Union Administration, National Credit Union Administration Board, New American Federal Credit Union, Timothy P. Hornbrook, Medigroup Enterprises, Inc., Martin Plotkin, Lynn F. Plotkin, Quixotic Corporation, and Joseph A. Shepard. Landmark asserted as its jurisdictional bases 28 U.S.C. § 1331 and 12 U.S.C. § 1789(a)(2). On June 13, 1989, plaintiff filed its first amended complaint which added only the facts surrounding its refusal to honor the draft on the letter of credit which Hornbrook presented on June 6, 1989.
Landmark attached to its complaint the letter of credit application, which, Landmark alleges, also serves as the repayment agreement between Landmark and Medigroup. The repayment agreement obliges Medigroup to repay Landmark in the event payment is made by Landmark to the beneficiary of the letter of credit and is guaranteed by three guaranty agreements signed *713 by Martin Plotkin, Lynn F. Plotkin and Quixotic Corporation. Plaintiff alleges that on May 19, 1989 it received a letter from Martin Plotkin, on behalf of Medigroup, informing plaintiff that Medigroup did not consider the draft submitted by Hornbrook on behalf of New American to be in compliance with the letter of credit. Plaintiff alleges that defendants Hornbrook and Shepard, on the other hand, have both indicated that they believe any dishonor of the letter of credit to be wrongful. Accordingly, plaintiff seeks declaratory judgment pursuant to 28 U.S.C. § 2201 respecting the rights and remedies of the parties and specifically declaring that:
none of the drafts presented by Hornbrook were in compliance with the requirements set forth in the letter of credit and imposed under applicable law;
that the New American Credit Union is no longer in existence and that its liquidating agent cannot, therefore, make demand for payment under the letter of credit;
that plaintiff rightfully dishonored the drafts presented by Hornbrook;
that Hornbrook's withdrawal of the documents constituting the May 19, 1989 draft renders the draft and the actions taken with respect thereto moot;
that, if the Court finds that plaintiff wrongfully dishonored the drafts presented by Hornbrook, the Court order Medigroup to repay plaintiff pursuant to the repayment agreement and that each of the guarantors be bound by the decision of this Court as respects the issues decided by virtue of the payment ordered pursuant to the draft;
that if the Court orders payment under the letter of credit, it further declare that no defendant has any additional claim against plaintiff under either the May 17 or June 6, 1989 drafts;
that if plaintiff is ordered to pay pursuant to either draft, the Court declare that plaintiff is only liable for the $750,000.00 amount of the letter of credit because plaintiff acted in good faith in refusing to honor the drafts; and,
that all expenses and costs incurred in the defense of this action, including attorneys' fees, be borne by Medigroup and/or the three corporate guarantors of the repayment agreement.
Defendants NCUA, NCUAB, New American and Hornbrook filed an answer and counterclaim herein. In support of their counterclaim, defendants allege that Landmark's refusal to honor New American's May 17, 1989 draft was wrongful and that, because Landmark did not act in good faith and refused to respond to New American's draft in a reasonable time, it waived and/or is estopped from asserting the reasons set forth in its declination letter dated May 31, 1989. Defendants allege further that Landmark's refusal to pay on New American's June 6, 1989 draft also constituted a wrongful dishonor. Defendants assert in addition that, because Landmark failed to act in good faith or respond to New American's June 6 draft in a reasonable time, Landmark waived and/or is estopped from relying on the reasons set forth in its declination letter dated June 9, 1989. Defendants seek damages in the amount of $750,000.00 plus prejudgment interest.
In their motion for summary judgment, defendants NCUA, NCUAB, New American and Hornbrook deny that the May 17, 1989 draft should be considered moot. They suggest nevertheless that the Court can grant their motion if it finds that either draft was in compliance with the letter of credit. In support of their motion, defendants allege that Landmark erroneously looked beyond the documentation presented in dishonoring New American's draft. Alternatively, defendants allege that, even if Landmark were correct in questioning the validity of Hornbrook's appointment as agent for the NCUAB and general manager of New American or in questioning the continued existence of New American for the purpose of presenting its draft, Landmark's reasons for declining to honor the draft were without merit.
Plaintiff, although initially obtaining additional time in which to file its opposition to defendants' motion for summary judgment, did not file any opposition. Rather, *714 plaintiff filed its own motion for summary judgment. In its motion, plaintiff cites several inapposite federal statutes as support, by way of analogy, for the proposition that "the term `revocation' should hardly be questioned as a bright line test for ascertaining the termination of an entity's legal existence." Landmark also alleges that "there can be little doubt that the question of New American's continued existence as a legal entity is a matter of federal law." Landmark goes on to note the "dearth of federal common law on corporations," and then to cite "the Missouri law of corporate dissolution." Finally, Landmark discusses at length the issue of the transferability of letters of credit.

B. CONCLUSIONS OF LAW.
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c); First Security Savings v. Kansas Bankers Surety Co., 849 F.2d 345, 349 (8th Cir.1988); Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). In passing on a motion for summary judgment, a court is required to view the facts and inferences that reasonably may be derived therefrom in the light most favorable to the non-moving party. Holloway v. Lockhart, 813 F.2d 874, 876 (8th Cir.1987); Economy Housing Co. v. Continental Forest Products, Inc., 757 F.2d 200, 203 (8th Cir.1985). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 392 (8th Cir.1986). As the Supreme Court has recently stated:
The inquiry performed is the threshold inquiry of determining whether there is the need for a trial  whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also 10A Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d, § 2739 (1983). Moreover, the inquiry is not whether there is literally no evidence to support the non-moving party's position, but rather whether "there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251, 106 S.Ct. at 2511 (citations omitted). In this regard, the burden of proof is the same for the judge as for the jury: "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512; Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
This case presents a somewhat unusual summary judgment scenario insofar as the parties' disputes are almost entirely legal. They do not, however, agree about the mootness of the May 31, 1989 sight draft. The plain language of the letter of credit does support plaintiff's contention, in its May 31 letter, that the earlier of the two drafts was not presented within the timetable for presentment upon notification of nonrenewal. However, the Court does find that by submitting a second sight draft on June 6, 1989, New American clearly chose to stand on that draft. With respect to the circumstances under which that draft was submitted, the accompanying documents, and Landmark's reasons for declining to honor the draft, the parties do not contest the material facts. Therefore, summary judgment is appropriate and the Court will analyze this matter only with respect to the June 6, 1989 draft.
The letter of credit at issue is, by its own terms, governed by the Uniform Customs and Practices for Documentary Credits as promulgated by the International Center of *715 Commerce ("UCP"). Accordingly, Article 5 of the Uniform Commercial Code as adopted by Missouri does not apply, unless otherwise agreed. Mo.Rev.Stat. § 400.5-102(4). See, also, Waidmann v. Mercantile Trust Co. Nat. Ass'n, 711 S.W.2d 907, 912 (Mo.App.1986). The record does not show that the parties here have entered into any other agreement, and, therefore, they are bound by the provisions of the UCP. Id.
"[I]n determining its obligation to pay, the bank looks solely to the letter of credit and the documents required therein to determine whether the documents trigger the letter of credit, regardless of whether the underlying contract has been performed." Id.
As its reasons for dishonoring the letter of credit involved here, Landmark indicated that the documents presented by Hornbrook were facially inconsistent with one another insofar as Hornbrook's appointment as general manager was not made by officials of the beneficiary, New American; and, also, because Landmark maintains that, New American's charter having been revoked, it is no longer a legal entity capable of having a general manager who could properly present a sight draft. The Court finds that neither of these arguments has merit as each depends for support upon legal interpretations of transactions other than those facially represented in the documents presented with the sight draft.
Landmark was aware that the NCUAB had placed New American in liquidation; Landmark was also aware, as evidenced by its own carbon copies to Hornbrook, that the NCUAB had appointed Hornbrook to act as its liquidating agent and New American's general manager during the liquidation process. Moreover, Hornbrook presented documentary certification of his appointment as liquidating agent and general manager with his sight draft. This Court has held that "when a federal instrumentality acts as a liquidating agent for a financial institution, the instrumentality stands in the shoes of the insolvent institution." National Credit Union Administration Board v. Fisher, 653 F.Supp. 349, 350 (E.D.Mo.1986).
Landmark asserts, as an alternative argument, that because the letter of credit was not transferable or assignable, no one other than New American's general manager named in the letter of credit could properly demand payment. This argument, however, is similarly unavailing. Crist v. J. Henry Schroder Bank & Trust Co., 693 F.Supp. 1429, 1433, 1433 n. 5 (S.D.N.Y. 1988); Pastor v. National Republic Bank of Chicago, 76 Ill.2d 139, 145, 28 Ill.Dec. 535, 537, 390 N.E.2d 894, 896 (1979). As the Pastor court pointed out, under strikingly similar facts, at the time the beneficiary's property and rights were transferred to its liquidator, the beneficiary had a right to demand and receive payment under the letter of credit. Accordingly, "[t]here is no reason why this right should not pass to the liquidator as a claim belonging to the company's estate to be collected by the liquidator for distribution according to law." Pastor, 76 Ill.2d at 149-50, 28 Ill. Dec. at 539, 390 N.E.2d at 898.
Accordingly, under the above analysis which this Court approves, Landmark cannot, as a matter of law, properly rely as a basis for failure to honor upon the fact that Hornbrook, rather than the general manager of New American, presented the draft for payment. By this same reasoning, the Court finds Landmark's argument regarding NCUAB's revocation of New American's charter to be without merit.
Therefore, for all of the foregoing reasons, and in its Judgment filed herein this date, the Court denies plaintiff's motion for summary judgment and grants the motion for summary judgment filed by defendants National Credit Union Administration, National Credit Union Administration Board, New American Federal Credit Union and Timothy P. Hornbrook.
The Court having thus resolved the issue of Landmark's refusal to honor the letter of credit presented by Hornbrook, it can discern no basis of jurisdiction over any possible claims by or on behalf of the remaining parties to this suit. Those parties' relationships with plaintiff exist under separate *716 and discreet contracts and any potential claims arising therefrom will depend for resolution upon state law. Therefore, the Court dismisses plaintiff's claims against those other parties without prejudice to refiling in the appropriate state forum.

JUDGMENT
In accordance with its Memorandum filed herewith this date,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the motion for summary judgment filed by defendants National Credit Union Administration, National Credit Union Administration Board, New American Federal Credit Union and Timothy P. Hornbrook is granted, and the plaintiff's motion for summary judgment is denied.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of defendants National Credit Union Administration, National Credit Union Administration Board, New American Federal Credit Union and Timothy P. Hornbrook in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00), and plaintiff's complaint against these defendants is dismissed.
IT IS FURTHER ORDERED that plaintiff's complaint as to any and all other parties and claims is dismissed without prejudice.