## CIRCUIT COURT OF FAIRFAX COUNTY

Williamsburg Outlet Partners

v.

Gran-Mark Investments, Inc., et al.

July 30, 1992

Case No. (Law) 78330

BY JUDGE THOMAS S. KENNY

This case involved a real estate deal that went sour in the closing moments of 1986 between plaintiff Williamsburg and the defendant Gran-Mark Investments, Inc. Gran-Mark had contracted to purchase from plaintiff a shopping mall in Williamsburg and had provided an earnest money deposit in the form of a $225,000 irrevocable letter of credit, issued by Peoples Bank of Charles Town, West Virginia. The letter of credit named as beneficiary the escrow company which was to serve as the settlement agency in the sale, Commercial Settlements, Inc. Both Peoples Bank and Commercial Settlements have been named as "stakeholder-defendants" in this action.

After the closing failed to occur as scheduled on or before December 31, 1986, Williamsburg directed Commercial Settlements to present the letter of credit. Commercial Settlements, having been advised by each side in the dispute that the failure to close was the other side's fault, was uncertain as to what to do. Its attorney, Mr. Wishner, finally wrote to the Bank on Commercial Settlements' behalf. He presented the letter of credit and advised the Bank that the proceeds would be interpleaded into court in order to allow a resolution of the dispute. This letter was received by the Bank one day before the letter of credit was to expire. On the same day the Bank received Mr. Wishner's letter, it was also served with an injunction issued by the Circuit Court of Jefferson County, West Virginia, at Gran-Mark's request, restraining it from paying on the letter of

credit. The Bank did not pay and took no further action regarding Mr. Wishner's letter. It has never communicated to Commercial Settlements or to Williamsburg whether it has dishonored, or why it has not paid, the letter of credit.[1]

At the conclusion of the trial in this matter, I ruled that Gran-Mark was the party responsible for the failure of the transaction and that Williamsburg was entitled to the liquidated damages called for in the sales contract. Although these liquidated damages were identified in the contract as the proceeds of the letter of credit, I further ruled that Gran-Mark had improperly interfered with the exercise of the letter of credit by filing the West Virginia injunction action. I also ruled that while there may have been a legitimate question as to the efficacy of the attempted exercise of the letter of credit by Mr. Wishner, Gran-Mark's injunction had effectively foreclosed the possibility of correcting any deficiency before the expiration of the credit. Accordingly, I held Gran-Mark liable to Williamsburg for an amount equal to the letter of credit.

I left open for further consideration and briefs the questions of:

(1) Whether the purported exercise of the letter of credit by Mr. Wishner on behalf of Commercial Settlements was valid;

(2) If the presentment was not valid, whether the Bank is precluded from challenging its validity; and

(3) Whether the Bank is jointly and severally liable with Gran-Mark for the amount of the credit?

For the reasons hereinafter set forth, I have concluded that the presentment by Mr. Wishner was not valid; that the Bank is not precluded from challenging its validity; and that the Bank is not liable with Gran-Mark.

## I. *Validity of Presentment*

The letter of credit at issue here was addressed to Mr. Stuart Levin, Vice President of Commercial Settlements, but the salutation used was "Gentlemen." I therefore ruled at trial that the credit was

---

[1] The injunction action in Jefferson County was dismissed because jurisdiction could not be obtained over Williamsburg, a necessary party. However, the temporary restraining order remained in effect until the Bank submitted itself to a court of competent jurisdiction with all necessary parties before it. That turned out to be this court. Nothing was ever done to formally terminate the injunction, however, and the West Virginia suit was dismissed for lack of prosecution in 1990.

in favor of Commercial Settlements, rather than Mr. Levin personally. The question here is whether a corporation's outside counsel, who presents no evidence of his authority to do so, can act on the corporation's behalf for the purpose of presenting a demand for payment under a letter of credit.

No Virginia cases have addressed the question of whether this state would follow the New York rule of "strict compliance" or the minority rule of "substantial compliance" with the requirements of a letter of credit. *See* plaintiff's reply brief, footnote 4. It is probably not necessary to divine which way the Supreme Court would go, since I believe that under either approach more is required for purposes of letters of credit than the normal agency relationship that would prevail in a contractual setting. *Far Eastern Textile, Ltd. v. City Nat'l Bank & Trust Co.*, 430 F. Supp. 193 (S.D. Ohio 1977). Obviously, as plaintiff points out, a corporation can only act through its agent, but that does not mean that a bank, whenever it is dealing with a corporation, need accept the word of any stranger that he is acting on the corporation's behalf. True, Mr. Wishner said in his letter that "our firm represents Commercial Settlements, Inc.", but the letter contained no evidence of support for that statement.

Plaintiff asserts that the case of *Crist v. J. Henry Schroder Bank & Trust Co.*, 693 F. Supp. 1429 (S.D. N.Y. 1988), supports its position that the presentment in this case was proper, since it adopts the principle that the proceeds would wind up in the hands of the beneficiary anyway, notwithstanding the fact that the presenter's authority did not appear from the face of the credit. I do not believe that the proper test is whether the proceeds would wind up in Commercial Settlements' hands. If the Bank had wrongly honored a letter of credit without insisting on compliance with its terms (such as by paying on it at the request of one whose authority was not apparent), it would have jeopardized its ability to recover indemnity from its customer, Gran-Mark, regardless of where the proceeds wind up. *Cf. Consolidated Aluminum Corp. v. Bank of Virginia*, 544 F. Supp. 386 (D. Md. 1982), *aff'd* 704 F.2d 136 (4th Cir. 1983).

I therefore believe that when a corporate beneficiary presents a letter of credit for payment, the authority of the one acting for it must appear from the face of the credit itself, from supporting documentation of the agency relationship accompanying the presentment, or from the presentment itself in appropriate circumstances (such as a

letter written on corporate letterhead and signed by a person identified as president or vice-president).[2] None of these circumstances is present in this case. Mr. Wishner wrote on his law firm's letterhead, claiming to represent Commercial Settlements but not offering any evidence of that relationship, such as a resolution of the board of directors authorizing him to act on its behalf in connection with this letter of credit.

Accordingly, I hold that the presentment by Mr. Wishner was invalid and ineffective to require payment under the letter of credit.

## II. *Preclusion*

The letter of credit in this case, by its terms, was "subject to the Uniform Customs and Practice for Documentary Credits (1983 Revision) International Chamber of Commerce Brochure 400" (hereinafter, the "UCP"). That document, in Article 16, provides in pertinent part as follows:

> b. If, upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, it must determine, on the basis of the documents alone, whether to take up such documents, or to refuse them and claim that they appear on their face not to be in accordance with the terms and conditions of the credit.
>
> c. The issuing bank shall have a reasonable time in which to examine the documents and to determine as above whether to take up or refuse the documents.
>
> d. If the issuing bank decides to refuse the documents, it must give notice to that effect without delay by telecommunication or, if that is not possible, by other expeditious means, to . . . the beneficiary, if it received the documents directly from him. Such notice must state the discrepancies in respect of which the issuing bank refuses the documents . . . .
>
> e. If the issuing bank fails to act in accordance with paragraphs (c) and (d) of this article . . . the issuing bank shall be

---

[2] Of course, the letter of credit itself may limit the method of presentment to a particular person or agent. This enumeration is meant to apply to cases such as this one where a corporate beneficiary is identified and no particular identification of the presenting agent is included.

precluded from claiming that the documents are not in accordance with the terms and conditions of the credit.

The letter of credit here was presented to the Bank one day before it expired. Under its terms, two things were required: Commercial Settlements' "signed statement after receipt of an Affidavit executed by Don Mintmire, Esq., stating [that default has occurred through no fault of Williamsburg]", and Commercial Settlements' sight draft for a sum not to exceed $225,000.

As noted earlier, Mr. Wishner's letter to the Bank was intended to serve as Commercial Settlements' "signed statement." He included in his letter an affidavit from Mr. Mintmire and a sight draft bearing the purported signature of Mr. Stuart Levin.[3]

Under the UCP, the Bank had a reasonable time to examine these documents and to determine, on the basis of these documents alone, whether to accept or refuse them. If it decided to refuse them, it was obliged to notify the presenter without delay, by telephone or other expeditious means, that it was dishonoring the credit and why.

The Bank claims that it had three business days to examine the documents and make its determination, based on § 8.5–112(1)(a) of the Uniform Commercial Code. It is true that it would have this time period if that statute were the only standard that applied. But here, the parties have expressly incorporated the UCP into the letter of credit, and that changes the standard from a fixed period to one which may be shorter under the facts and circumstances of a particular case.

Was it reasonable to expect the Bank to review Mr. Wishner's letter, Mr. Mintmire's affidavit, and the sight draft purportedly signed by Mr. Levin, to determine whether they were regular on their face and should be taken up, and to communicate to Mr. Wishner any discrepancies in time for him to correct them by the close of business the day after receipt of these documents? Perhaps. I am certainly not prepared to say as a matter of law that it would have been *un*reasonable to do so under normal circumstances. However, normal circumstances hardly prevailed here. First, Mr. Wishner's presentment

---

[3] Mr. Levin did not sign this sight draft — Mr. Wishner himself signed Mr. Levin's name to the draft, with Mr. Levin's express (verbal) authority, presumably before the fact. No indication appears on the sight draft that it was signed for Mr. Levin by anyone else.

letter highlighted the existence of a serious dispute between Williamsburg and Gran-Mark. This in and of itself would put an issuing bank on a high degree of alert as to potential difficulties. Second, and more importantly, the Bank was apparently served that same day with a temporary restraining order[4] prohibiting it from paying on the letter of credit. Given these two factors, I believe that it is not reasonable to expect the Bank to process these documents and determine whether or not to honor them within a single business day.

Even if the Bank was entitled to take longer than a day to determine whether to honor the credit (by which time, of course, it would have expired), Williamsburg says that the Bank had the duty to communicate expeditiously with Mr. Wishner to tell him why it was dishonoring. Furthermore, because the Bank never did this, says Williamsburg, it is now precluded from dishonoring the credit by reason of paragraph (e) of Article 16 of the UCP, and this preclusion would occur *even though there would have been nothing that Mr. Wishner or Commercial Settlements could have done to revive the expired letter of credit.*

This would truly be an exaltation of form over substance. Since the beneficiary's rights were already terminally compromised by the unreasonably late presentation of defective documents, how were they further prejudiced by a lack of notice afterward? If it is an elementary principle of law that there should be no right without a remedy, so also should there be no remedy without a right.

No harm, no foul. The Bank is not precluded from dishonoring the letter of credit.

### III. *Joint and Several Liability*

Because I have found no basis for liability in any event against the Bank, the third question is moot.

### IV. *Attorneys Fees/Sanctions*

Commercial Settlements and the Bank have each moved for an award of their attorneys fees incurred in this case from the corpus of

---

[4] A copy of this order has not been introduced into evidence, but it was sufficiently described in the testimony of the case to know that it prevented the Bank from paying on the letter of credit until further order of the Circuit Court of Jefferson County, and that it was issued at the request of Gran-Mark. An uncertified copy of the order was attached to Gran-Mark's brief.

the letter of credit. Since the letter of credit is not being paid, these requests are moot and will be denied.

In my ruling from the bench at the trial of this case, I said that Williamsburg should recover its attorneys fees from Gran-Mark and suggested a mechanism for determining the amount of those fees.

Commercial Settlements has recently filed a motion for sanctions against Gran-Mark for filing a groundless crossclaim against it. No apparent effort was evidenced by Mr. Wishner at the trial of this case to defend against this crossclaim, and in fact, he repeatedly asked to be excused from the courtroom for the remainder of the trial. Under these circumstances, it is difficult to comprehend how Commercial Settlements has been damaged or why sanctions would be justified, especially in light of the view I have taken of the role played by Mr. Wishner and Commercial Settlements in this case. The motion for sanctions is denied without the necessity of further briefing or argument.